Anthony M. Solis, SBN 198580
A Professional Law Corporation
23679 Calabasas Road, Suite 412
Calabasas, CA 91302-1502
(213) 489-5880 - Phone
(213) 489-5923 - Fax
anthonysolislaw@gmail.com

Attorney for Defendant
Derek Longoria

United States District Court

Central District of California

Eastern Division

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>      v.<br><br>Derek Longoria,<br><br>                    Defendant. | Case No.: ED CR 16-135-JGB<br><br>Defendant Derek Longoria's Sentencing Memorandum<br><br><br>Sentencing Date: Nov. 5, 2018, 2:00p<br>Hon. Jesus G. Bernal |

COMES NOW the defendant, Derek Longoria, by and through his counsel of record, Anthony M. Solis, and submits his sentencing memorandum.

Dated: October 29, 2018         Anthony M. Solis,
                                A Professional Law Corporation


                                *Anthony M. Solis /s/*
                                By: Anthony M. Solis
                                Attorney for Defendant
                                Derek Longoria

---

**Defendant Derek Longoria's Sentencing Memorandum**

**Memorandum of Points and Authorities**

**Introduction**

Derek Longoria is no sexual predator. Rather he is a 30-year old man who, at age 21 began an online relationship with a minor who was 13 years old. PSR ¶15.[1] relationship began on an online gaming platform and progressed for approximately two years, after which it progressed to a romantic and, later, a sexual relationship. Longoria is a man whose has had significant academic, social and mental health challenges. When the victim, L.N., expressed her affection for Longoria, Longoria reciprocated and believed that the two were in a real relationship. Longoria and L.N. communicated back and forth until Longorial finally traveled to England to meet L.N., where a sexual relationship commenced. L.N. conceded to investigators that she sent "loads" of naked pictures to Longoria during their relationship. See Complaint Dkt. #1, ¶ 24. Also, during their meetings in England, Longoria recorded some of the sexual activity on his cell phone.[2] Later, L.N. ended their relationship and, still later, reported the illicit relationship to authorities in Britain. An investigation ensued.

When confronted by authorities in the U.S., Longoria admitted to the relationship, receiving nude photos and visiting L.N. in England, and the sexual relationship. Complaint, Dkt. #1, ¶ 15.

The government and the defendant have entered into an agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), for a binding range of between 84 and 120 months. The Probation Office has recommended the low end of the range, 84 months. See Probation Rec. Letter. The government, for its part believes a sentence of 96 months is appropriate, based largely on Mr. Longoria's alleged "generalized sexual interest in children." See Govt Sentencing Memo, Dkt. #65, p. 2.

---

[1] PSR refers to the Revised Presentence Investigation Report filed at Dkt. #67.

[2] This cell phone video forms the basis of the "production of child pornography" charged in the original indictment. Also on his cell phone were images of L.N. hugging and kissing Longoria. PSR ¶ 21.

**Defendant Derek Longoria's Sentencing Memorandum**

2

For the defendant's part, the lowest sentence the Court could issue is the appropriate sentence. In this case: 84 months in custody is that sentence, though it is greater than necessary to achieve the goals of sentencing.

## I.

## The Sentencing Factors

The following is a discussion of the factors the Court must consider under 18 U.S.C. § 3553(a).

**1. The Nature and Circumstances of the Offense.**

The offense in the case is a rather complicated affair and not the typical conduct one sees with a violation of 18 U.S.C. § 2423(b)(travel with intent to engage in illicit sexual conduct).

Derek Longoria met L.N. online in "gamer" environment. They developed a relationship and, later, developed feelings for one another. After about two years, they agreed to meet one another and Mr. Longoria traveled to England where he and L.N. had sexual contact with one another. PSR. ¶18. Later, L.N. found a boyfriend in England and L.N. ended her relationship with Longoria. Initial reports, including the complaint in this matter suggested the relationship was coercive, however, the text messages and the images from Longoria's phone told a different story. As set forth in the PSR, the videos of L.N. in Longoria's phone did document sexual contact between the two, but also depicted them hugging and kissing, reflecting their mutually affectionate relationship. PSR ¶ 21.

The PSR ¶ 22 found that "According to the complaint, [Longoria's seized] notebook computer contained approximately 770 images and 137 videos of suspected child pornography depicting victims other than L.N." *id*. While it is true that the complaint does say that, the paragraph goes on to confirm that, according to the factual basis of the plea agreement, Longoria knowingly possessed only a single video of child pornography with a victim not L.N.

In fact, the forensic media report generated by the government revealed that of

those 907 images and videos, **only one** contained an image of child pornography. Out of 194 videos submitted to the National Center for Missing and Exploited Children (NCMEC) by HSI SA Dayna Roelfs only one video depicted child pornography. That video depicted a teenager approximately 13-16 years old who takes her top off and exposes her breasts only.

### 2. The History and Characteristics of the Defendant.

The history and characteristics of Mr. Longoria are extensively documented in the psychological report of Dr. Richard Romanoff filed concurrently herewith. However, the government has taken to characterize Mr. Longoria as posing a "substantial danger to public safety." Govt Memo p. 2. The government also asserts that Longoria has "a generalized sexual interest in children." *id.* These statements are part of the government's justification in a lengthy prison sentence. Neither statement is true.

As set forth in the psychological report of Dr. Richard Romanoff, Mr. Longoria was scored on the Static 99R, a "carefully developed research instrument that has identified important variables that significantly correlate with sexual recidivism risk." Romanoff Report, p. 20. Mr. Longoria scored a score of 3, reflecting that:

> There is a ninety-five percent chance that his actual recidivism rate is between 7.0 and 8.8 percent over a five year period of time.[3] This score would place him in the low-moderate risk category for committing a future sexual offense as computed by the Static 99R."

Romanoff Report. P. 21.

The government's risk analysis is belied by the Romanoff report and otherwise unsupported by any clinical analysis. There is no evidence cited by the government that the defendant's risk to the public is "substantial."

---

[3] It should also be noted that the charged offenses took place in 2011 and 2012 and there has been no known recidivism from that period to the present.

**Defendant Derek Longoria's Sentencing Memorandum**

4

With regard to his alleged "generalized sexual interest in children," this assertion is also belied by the facts of the case and Mr. Longoria's history.

As set forth above, there was some self-made videos of Longoria and the victim documenting their relationship, including sexual contact. However, across 22 seized digital devices, including phones, hard drives, flash drives, computers, etc, only a single video of child pornography was located, and that image only depicted breasts. Dr. Romanoff opined:

> Mr. Longoria reported no memory of this video, and no knowledge of how it came to reside on his computer. He did acknowledge downloading general pornography from Internet-based websites, that all indicated the females were over the age of eighteen. While it is possible that Mr. Longoria is being less than truthful in this denial, or is unable to remember exactly what happened because of memory and cognitive difficulties associated with his. . .psychotic mental illness, it is important to emphasize that individuals who actually suffer from pedophilia, or who are attracted to child victims, would rarely be found to be in possession of just a single video containing child pornography embedded in a wider collection of age-appropriate pornography.

Romanoff Report, p. 24.

Dr. Romanoff concluded "[I] do not believe that current assessment results indicate the presence of a disorder of sexual deviancy for Mr. Longoria."

In sum, while Longoria's conduct was wrongful and illegal, it does not follow that he presents a "significant" danger to the public, or that he has a "generalized sexual interest in children."

///

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense; To Promote Respect for the Law, Just Punishment.

The crime to which Mr. Longoria has pled guilty is a doutbless serious offense. Originally, he was charged with production of child pornography and possession of child pornography, along with the § 2423 charge. He faced a mandatory minimum sentence of 15 years and a 25 year advisory guideline sentence. This offense and its aftermath has traumatized him and devastated his complex psychology. His family has been in a state of suspended animation for years wondering about what his fate will be. In short, Mr. Longoria is aware that he committed a serious offense. Any prison sentence for Mr. Longoria will thrust him into a foreign environment where he will not have the support of his family. Nearly any custodial sentence the Court imposes will support the goals of sentencing because the the effects of such a sentence will fall particularly hard on Mr. Longoria.

### D. To Afford Adequate Deterrence to Criminal Conduct.

For Mr. Longoria, the offense conduct in this case was aberrational. He did not "groom" the victim, nor does his offense constitute any kind of pattern of conduct. Nevertheless, Mr. Longoria, devoid of criminal history needs no additional impetus to avoid criminal conduct. Any lengthy period of incarceration would serve only to incapacitate him. As he has shown in the period after the offense but before his arrest, he needs no additional measures to ensure his compliance with the law. The offense ended in 2012. He was not arrested until 2016. This is a four year period of compliance with the law **without** any supervision from the criminal justice system. After his arrest, he was placed in the care of his parents with a location monitor, but few other conditions. He has always been in compliance with the terms and conditions of his release since 2016. PSR ¶ 13. Any sentence the Court imposes will be adequate to deter Mr. Longoria from further criminal conduct.

Were any would-be offender to learn the legal odyssey that Mr. Longoria has been through, any rational potential offender would deem the risks to far outweigh

any potential benefits from the conduct.

### E. To Protect the Public from Further Crimes of the Defendant;

As noted above, the offense ended six (6) years ago. In the intervening period, Mr. Longoria has remained with his family and address his significant mental health concerns, but has most decidedly not re-offended or even engaged in conduct which suggests he might re-offend. As detailed above, Dr. Richard Romanoff has deemed his risk of recidivism to be low. The Court does not need to mete out a draconian sentence of incarceration to protect the public from "further crime."

### F. To Provide Needed Medical Care, etc.

Mr. Longoria's significant mental health history is detailed in the PSR at pargraphs 63 through 72 and is further detailed in the concurrently-filed report of Dr. Richard Romanoff. The Court will also recall the two competency reports of Drs. Romanoff and Saul Faerstein, each of which detailed Mr. Longoria's significant and evolving mental health challenges.

Any sentence the Court imposes would have to take into consideration of Mr. Longoria's significant need for mental health treatment and counseling. Most recently, Dr. Romanoff opined that:

> I believe that [Longoria] remains in need of meaningful mental health treatment aimed at addressing his schizophrenic illness and the co-occurring depression associated with this illness. This needs to include ongoing use of appropriate antipsychotic and antidepressant medications well as ongoing psychotherapy aimed at helping him better understand the nature of his illness, and his ongoing need for treatment. He would also benefit from treatment aimed at improving his understanding of how to manage delusional thinking, paranoid thinking, and auditory hallucinations and from targeted treatment aimed at helping

him to develop improved skills for managing the demands
of day-to-day life and for reducing his level of dependency
on his parents.

Romanoff report, p. 25.

**G.    The Kinds of Sentences Available.**

The available sentences are set forth in the PSR at paragraphs 95-103, however, as the Court is aware the parties entered into a binding plea.

**H.    The Need to Avoid Unwarranted Sentencing Disparities.**

Mr. Longoria's personal history and characteristics and the particular facts of this case would fully justify any disparity in sentencing that the Court might fashion.

**Conclusion**

For the foregoing reasons, the Court is urged to fashion the most mitigated sentence possible that will achieve the goals of sentencing.

Dated: October 29, 2018    Respectfully submitted,
Anthony M. Solis,
A Professional Law Corporation

*Anthony M. Solis /s/*
By: Anthony M. Solis
Attorney for Defendant
Derek Longoria

---

**Defendant Derek Longoria's Sentencing Memorandum**